## RICHARDS v. OCEAN TILE, MARBLE & TERRAZZO CO., et al.

Industrial Commission.

November 22, 1955.

Bart E. Sullivan, Pompano Beach and Truett & Watkins, Tallahassee, for claimant.

Walters, Moore & Costanzo, Miami, for the employer and insurance carrier.

BY THE COMMISSION.

This cause came on to be heard upon application of the employer and carrier for review of a deputy's order dated July 27, 1955, awarding claimant compensation for disfigurement.

Claimant was employed in the tile and marble business, and on July 8, 1954, while engaged in the course of his employment,

suffered an injury when the blade of a tile saw broke, flew past his face and caused a two-inch laceration on his left cheek. A permanent two-inch scar remains on his cheek.

The deputy in his order found that the disfigurement affected claimant's future earning capacity to the extent of 12½% of the maximum allowance under section 440.15 (3) (t), Florida Statutes. The employer and carrier contend that the deputy's finding is contrary to the law and evidence.

Section 440.15 (3) (t) follows—"(t) Disfigurement: The commission shall award proper and equitable compensation for serious facial or head disfigurement, not to exceed two thousand dollars; provided, that in such award the commission shall consider only the effect such disfigurement shall have on the *future earning capacity* of the injured employee." (Emphasis supplied.)

Although the Supreme Court in Ball v. Mann, Fla. 1954, 75 So. 2d 758, was confronted with section 440.15 (3) (u), Florida Statutes, with respect to diminution of earning capacity where injuries to the body as a whole occur, rather than section 440.15 (3) (t), they set forth several factors to be considered in determining whether there has been a diminution of earning capacity in any one particular case, viz.—"* * * no one standard is conclusive in the determination of the degree of incapacity to earn the same wages as prior to an injury. Instead there should be taken into consideration, among other things, such variables as the injured employee's physical condition, age, industrial history, education, and inability to obtain the type of work which he can do insofar as affected by the injury."

In the instant cause we feel that "the effect such disfigurement shall have on the future earning capacity," as specified in section 440.15 (3) (t), has a direct relationship to diminution of earning capacity as discussed in Ball v. Mann, supra. The record is devoid of substantial evidence relating to claimant's future earning capacity. On the contrary, the only evidence relevant to claimant's future earning capacity shows that claimant is now earning more wages than at the incidence of the injury. This fact alone is not necessarily conclusive, but in this case there is a total lack of any evidence to indicate that the scar on claimant's cheek will ever adversely affect his earning capacity.

Having considered the cause upon the record and arguments of counsel for the parties, and it appearing that the deputy's findings of fact are not supported by competent substantial evidence,

which accords with logic and reason, and that his order does not accord with the essential requirements of the law, within the meaning of U. S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So. 2d 741, the order is reversed and the claim for compensation for permanent partial disability on account of disfigurement is rejected.

WALTER L. LIGHTSEY, Commissioner (dissenting).

I disagree with the order of the majority of the commission in this case, as I consider that the award made by the deputy commissioner should be affirmed. He found that as a result of the injury—"Claimant has been left with a two-inch permanent scar on his left cheek, giving rise to a disfigurement which shall affect claimant's future earning capacity to the extent of 12½% of the total allowance under the Act of $2,000," and awarded claimant $250 as compensation therefor. In U. S. Casualty Co. v. Maryland Casualty Co., 55 So. 2d 741, the Supreme Court of Florida stated that—"the full commission should adhere to the findings of fact so made by the deputy commissioner unless there is no competent substantial evidence to sustain them. This is so because of the aforementioned fact that under the law the deputy commissioner is the only person charged with the burden and responsibility of hearing the witnesses and making findings of facts."

The claimant was the only witness to appear and testify before the deputy. The deputy thereby had the opportunity to personally observe the seriousness of the disfigurement. It is not conclusive that because of a general 15-cents-an-hour raise given by the employer to its tile setters the claimant is currently earning more wages than he did before the accident, as the law provides that in awarding proper and equitable compensation for serious facial disfigurement—"the commission shall consider only the effect such disfigurement shall have on the *future earning capacity* of the injured employee." (Emphasis supplied.)

Claimant sometimes personally calls at homes to solicit and estimate jobs for his employer, and he hopes at some future time to operate a tile setting business of his own. People sometimes ask him, "Where did you get that scar," and a few fellows have called him, "Scarface," which is embarrassing to him at times. It is not unreasonable to presume that such incidents will affect adversely future earning capacity of the claimant, and "drawing presumptions from the evidence" is the prerogative of the deputy commissioner. City Ice & Fuel Division v. Smith (Fla.), 56 So. 2d 329.

In Amalgamated Sugar Co. v. Industrial Commission (Utah), 286 P. 959, the court stated—"In most cases any disfigurement or loss of bodily function ultimately impairs earning capacity."

In an Indiana compensation case involving disfigurement the court pointed out—"There is no class of evidence more satisfactory or convincing to fact finders than the production and inspection of the very object or person whose condition is being investigated . . . We are of the opinion that such evidence is particularly appropriate in such a case of this kind . . . it was proper for the industrial board to observe the appellee's condition, and from his appearance, together with the evidence heard, to draw its conclusions as to the extent to which the disfigurement had impaired the future usefulness or opportunities of the appellee." Calumet Paving Company v. Butkus, 47 N. E. 2d 829.

Since the deputy not only heard the evidence but observed the claimant's appearance, he was in a better position than the full commission to draw conclusions as to the extent to which the facial scar has impaired the claimant's *future* earning capacity; and on the record it cannot be said that there is no competent substantial evidence to sustain his finding that the disfigurement will affect claimant's future earning capacity to the extent of 12½% of $2,000.

The limitation that compensation for disfigurement shall not exceed $2,000 has not been changed since the law was enacted in 1935. Since then the maximum weekly compensation rate has been increased from $18 to $35, and the maximum duration of payments for permanent total disability has been raised from 350 weeks to "the continuance of such total disability." In 1939 the average weekly wage of workers covered under the Florida Unemployment Compensation Law was $18.44, while now it is $62.61. Even if $2,000 was deemed adequate compensation for serious facial disfigurement in 1935, such amount is totally inadequate today, particularly when fixed as a maximum for the compensation payable under a provision of the law which purports to relate such compensation to future earning capacity. It seems to me that the effect of any serious facial disfigurement on the future earning capacity of an injured employee is more likely to exceed $2,000 than to be any less, and that the $250 awarded by the deputy in the instant case was inadequate under the evidence. The claimant, however, did not apply for review of the award, and the consideration by the full commission is confined to the grounds presented. Accordingly, it is my opinion that the award should be affirmed.